UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Glenn D. Abbotts, Steven Beigel,
Alyn Bell, Michael Cetta, Andrew
R. Cherna, Richard Cooper, Stewart
W. Evey, Timothy J. Hanratty, F.
Scott Jackson, Jeffrey Kaufman,
Anis Kaywood, Gerald Moreland,
James T. Reilley, Rick Starr, Sean
L. Sullivan, and James J. Walsh,

       Plaintiffs,

v.                                        Civ. No. 06-1301 (JNE/SRN)
                                         ORDER

Caldwell Campbell, Esq., Rowland
W. Day II, Esq., and Day & Campbell,
LLP,

       Defendants.

_____

Mark J. Kallenbach, Esq., Kallenbach Law Office, appeared for Plaintiffs Glenn D. Abbotts,
Steven Beigel, Alyn Bell, Michael Cetta, Andrew R. Cherna, Richard Cooper, Stewart W. Evey,
Timothy J. Hanratty, F. Scott Jackson, Jeffrey Kaufman, Anis Kaywood, Gerald Moreland,
James T. Reilley, Rick Starr, Sean L. Sullivan, and James J. Walsh.

Charles Jones, Esq., Meagher & Geer, PLLP, appeared for Defendants Caldwell Campbell, Esq.,
Rowland W. Day II, Esq., and Day & Campbell, LLP.

_____

      Sixteen individuals bring this action against Defendants Caldwell Campbell, Rowland

Day II, and Day & Campbell, LLP, (collectively, Defendants) for breach of various fiduciary

duties, negligent omission, attorney malpractice, and front running.  These claims arise out of

Plaintiffs' private purchase of unregistered shares of International Gaming Management, Inc.

(IGM).  The case is before the Court on the parties' motions for summary judgment.  Because

the action is time-barred and Plaintiffs present no competent evidence as to causation, the Court

grants Defendants' motion and denies Plaintiffs' motion.

## I.  BACKGROUND

More than fourteen years ago, Plaintiffs entered into a private investment contract with IGM.  Pursuant to the terms and conditions of the Common Stock Purchase Agreement (CSPA), Plaintiffs purchased shares of IGM stock for $1.50 per share.  The IGM shares purchased by Plaintiffs were unregistered (CSPA shares).  Existing securities laws prevented Plaintiffs from selling their CSPA shares on public stock exchanges for a two-year period from purchase.  Plaintiffs could, however, sell their CSPA shares to foreign buyers provided the sale complied with the requirements of Securities and Exchange Commission Regulation S.  *See* 17 C.F.R. § 230.901 (Regulation S).[1]

The CSPA placed additional restrictions on Regulation S sales of CSPA shares.  It required a Regulation S purchaser to agree to abide by certain CSPA provisions (limitations on the election of officers, confidentiality restrictions, and an indemnification agreement, for example) as part of the sale.  As a consequence, CSPA shares had to be offered for sale at a significant discount.  The CSPA also required investors wishing to sell their CSPA shares under Regulation S to obtain an attorney opinion indicating that the sale complied with Regulation S.

The CSPA identifies Day as the "representative of the purchasers" and as the purchasers' "agent" with respect to transactions contemplated by the CSPA.  The Day & Campbell law firm is identified as "special counsel to the purchasers."  Day owned IGM stock and was the largest CSPA investor.  As part of the initial investment agreement Defendants agreed to prepare and submit a registration application for Plaintiffs' CSPA shares, and to do so within 180 days of

---

[1]     Regulation S permitted the resale of unregistered securities to non-United States residents under certain conditions, including an offer and sale occurring outside of the United States.  *See* 17 C.F.R. § 230.901 (1990).

their purchase.  SEC approval of the registration of the CSPA shares would eliminate the restrictions on their sale and allow Plaintiffs to freely trade their shares.

Despite urging by Plaintiffs, Day did not file the registration application with the SEC. In April 1993, IGM's legal counsel, Dorsey & Whitney LLP (Dorsey), assumed responsibility for registering the CSPA shares.  IGM already had some registered shares, and those shares were trading for approximately ten dollars per share around this time.  A few months later, IGM sent a letter to CSPA investors informing them that the registration application had been filed with the SEC and that IGM expected the stock to be freely tradable within forty to ninety days.  However, the SEC did not approve the application, and Plaintiffs' CSPA shares remained unregistered and restricted.

On July 2, 1993, Day purportedly executed a waiver agreement (Waiver) with IGM on behalf of CSPA purchasers that irrevocably waived certain rights of IGM under the CSPA and eliminated some of the restrictive provisions of the CSPA.  In particular, the Waiver permitted CSPA investors to sell up to 200,000 CSPA shares to foreign buyers pursuant to the requirements of Regulation S without requiring the foreign purchaser to agree to certain terms of the CSPA.  The Waiver did not eliminate the requirement that a Regulation S seller obtain an opinion from counsel indicating the sale complied with Regulation S.

On August 16, 1993, Day tried to sell 200,000 shares of his CSPA stock to a foreign purchaser pursuant to Regulation S.  The transaction failed after Dorsey issued an opinion that Regulation S was not available "under the circumstances."

On July 28, 1994, as part of a criminal investigation of several IGM executives, federal and state authorities executed a search warrant at IGM's offices.  The next day, the price of IGM

dropped sharply, which led to the suspension of trading of IGM stock.  The company later failed and the value of IGM shares went to nothing.

After the collapse of IGM in 1994, almost all Plaintiffs wrote off their IGM investment losses on subsequent tax returns.  Deposition testimony and interrogatories reveal that many Plaintiffs simply discarded records relating to the CSPA purchase; others lost their documents.  None of the Plaintiffs thought much about IGM again until eleven years later when attorney Mark Kallenbach wrote to them, in late 2005, about potential claims against Defendants.[2]

Plaintiffs now seek damages for their investment losses.  Plaintiffs blame the losses on Defendants' failure to inform them of the July 1993 Waiver.  Plaintiffs claim they would have sold their CSPA shares to foreign investors under Regulation S when the registered stock price was ten dollars per share if they had known about the Waiver.  Instead, Plaintiffs assert, Defendants' concealment of the Waiver deprived them of the opportunity to sell their shares for a profit.  Defendants contend that they did not have a duty to inform Plaintiffs of the Waiver, but that Defendant Day generally did so anyway.  Defendants also assert they did not attempt to conceal the Waiver.  Defendants further argue Plaintiffs have failed to establish that their lack of knowledge of the Waiver proximately caused their financial losses, and that it was the mismanagement of IGM, which culminated in the search of IGM offices and the failure of the company, that caused Plaintiffs' financial losses.  In any event, Defendants assert they are entitled to summary judgment on all claims because Plaintiffs' action is untimely.

## II.  DISCUSSION

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the

---

[2]      As explained, *infra*, Kallenbach brought his own suit following his 2000 discovery of the Waiver.  That suit settled in 2003, following which he sent the letters to the Plaintiffs.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The movant "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant satisfies its burden, the party opposing the motion must respond by submitting evidentiary materials that "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); *see Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In determining whether summary judgment is appropriate, a court must look at the record and any inferences to be drawn from it in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## A.      Statute of limitations

The parties agree that Plaintiffs' claims are subject to a six-year statute of limitations. *See* Minn. Stat. § 541.05, subd. 1(1), (5) (2006). The parties disagree as to when the limitations period began to run. The applicability and construction of a statute of limitations is a question of law. *See Benigni v. County of St. Louis*, 585 N.W.2d 51, 54 (Minn. 1998).

It is undisputed that Plaintiffs experienced some measure of financial damage relating to their CSPA shares when the market value of IGM stock dramatically decreased following law enforcement's search of IGM's offices and the suspension of trading of IGM stock. Under Minnesota law, the limitations period begins to run when the cause of action accrues, which is when a party may bring suit without dismissal for failure to state a claim. *See Herrmann v. McMenomy Severson*, 590 N.W.2d 641, 643 (Minn. 1999). Thus, Plaintiffs' cause of action accrued and the limitations period commenced no later than July 29, 1994. *See Anton v. Mirviss*, 720 N.W.2d 333, 335 (Minn. 2006) (action accrued when plaintiff suffered "some damage").

Plaintiffs commenced the instant action in March 2006.  Absent tolling of the limitations period, Plaintiffs' claims are untimely.

Plaintiffs argue Defendants' fraudulent concealment of the waiver tolled the limitations period until they discovered the existence of the Waiver in December 2005.  *See Wild v. Rarig*, 234 N.W.2d 775, 795 (Minn. 1975) (if fraudulent concealment of a cause of action is involved, the statute of limitations period is tolled until the concealment is or could have been discovered through reasonable diligence).  Plaintiffs bear the burden of establishing fraudulent concealment, including proving that concealment of the Waiver could not, through reasonable diligence, have been discovered sooner than March 2000, and was not the result of their own negligence.  *See Hope v. Klabal*, 457 F.3d 784, 792 (8th Cir. 2006); *Cohen v. Appert*, 463 N.W.2d 787, 790 (Minn. Ct. App. 1990).

As for concealment, Defendants' silence regarding the Waiver may amount to fraudulent or intentional concealment if Defendants had a fiduciary duty to disclose its existence to Plaintiffs.  *See Murphy v. Country House, Inc.*, 240 N.W.2d 507, 512 (Minn. 1976) (holding that a fiduciary can be liable for fraudulent misrepresentation by silence, even though there is no evidence of fraudulent statements or intentional concealment); *Cohen*, 463 N.W.2d at 790.  Assuming Plaintiffs can establish the existence of such a fiduciary relationship in July 1993, and can show that Defendants failed to inform them of the existence of the Waiver, Plaintiffs must also prove that, exercising reasonable diligence, they could not have discovered the Waiver before March 2000.  *See Hope*, 457 F.3d at 792; *Cohen,* 463 N.W.2d at 790-91.  The Court

concludes as a matter of law that tolling is not warranted here because Plaintiffs have failed to meet their burden.[3]

Plaintiffs baldly assert that the Waiver could not have been discovered through reasonable diligence because until June 2000 the government had custody of the files containing the Waiver.  However, they offer no support for that proposition.  In fact, it is undisputed that in 1994, IGM requested that the government give it access to certain seized documents and business records.  The government permitted access to requested documents.[4]  Nothing in the record indicates that any request for access was denied.  In June 2000, the government returned all of the seized documents to Mark Kallenbach.[5]  Plaintiffs do not assert that they requested access to IGM documents either from the government or IGM.  Similarly, they provide no legal or evidentiary basis to suggest that the government would have denied a request for access to IGM documents.  Thus, Plaintiffs' argument that government possession of documentary evidence between July 1994 and June 2000 prevented discovery is unavailing.  Plaintiffs have

---

[3]    "Normally, in a statute of limitations context, fraudulent concealment and a plaintiff's reasonable diligence are questions of fact unsuited for summary judgment."  *Hines v. A.O. Smith Harvestore Prods., Inc.*, 880 F.2d 995, 999 (8th Cir. 1989).  However, where the evidence leaves no room for a reasonable difference of opinion, the court may resolve the issue as a matter of law.  *See Miles v. A.O. Smith Harvestore Prods., Inc.*, 992 F.2d 813, 817 (8th Cir. 1993).

[4]    Plaintiffs' counsel, Mark Kallenbach, was an officer and member of the Board of Directors of IGM until 1992.  After IGM failed in 1994, Kallenbach and another individual were appointed to IGM's Board of Directors and attempted to salvage parts of IGM's business.  Pursuant to these efforts, Kallenbach was involved in gaining access to IGM's business records held by the government.  The endeavor to salvage IGM was unsuccessful.

[5]    The government contacted Kallenbach in May 2000 to inquire about whether IGM wanted its documents returned.  Kallenbach accepted the return of the documents and reviewed them in relation to a pending action brought by other IGM investors against IGM executives.  Kallenbach represented the plaintiffs in that case.  The record reveals that it was during this review that Kallenbach found the Waiver.

failed to demonstrate that reasonable diligence would not have provided access to the files containing the Waiver before March 2000.

The Court is not persuaded by Plaintiffs' argument that a different result is dictated by *Barry v. Barry*, 78 F.3d 375 (8th Cir. 1996). In *Barry*, the Court of Appeals for the Eighth Circuit determined that a reasonable jury could have made the factual findings requisite to a tolling determination. *See id.* at 380-81. However, in *Barry*, the plaintiff immediately hired lawyers and a financial planner after the defendants informed her that a company she co-owned with them was losing money and they advised her to sell her interest in the company to them. *See id.* at 378. While the plaintiff did not discover that the defendants had provided her with false financial statements and had fraudulently concealed the company's profitability until eight years after she agreed to sell her interest to defendants, she presented evidence indicating that her experts could not, through reasonable diligence, have discovered the defendants' fraudulent concealment. Remanding for trial, the Eighth Circuit determined that a jury could reasonably believe that the plaintiff exercised due diligence in accepting the financial statements as true. *See id.* at 380. Here, Plaintiffs have failed to present evidence that the allegedly concealed Waiver was not, through reasonable diligence, discoverable before March 2000.

Plaintiffs also assert that they were under no obligation to seek out a Waiver that they did not know existed. While the search warrant and the stock value loss did not relate to the Waiver, the law does not require that a plaintiff understand the precise nature of his cause of action, only that he has one.

> It is not necessary that a party should know the details of the evidence by which to establish his cause of action; it is enough that he knows that a cause of action exists in his favor, and when he has this knowledge it is his own fault if he does not avail himself of those means which the law provides for prosecuting or preserving his claim.

*Wild*, 234 N.W.2d at 451.  Plaintiffs are sophisticated investors who entered into the CSPA in 1992 with the acknowledged goal of turning a quick profit.  Notwithstanding the existence of the Waiver, Plaintiffs knew by April 1993 that Defendants had failed to submit a registration application to the SEC as promised.  Plaintiffs also knew that the lack of registration of CSPA shares prevented them from freely selling their shares for a profit when registered IGM stock sold for ten dollars a share in July 1994.  Moreover, Plaintiffs had reason to know no later than July 29, 1994, that something was drastically wrong when the value of IGM stock plummeted and trading in IGM stock was suspended following the search of IGM offices by law enforcement officials.

Despite this knowledge, according to the record in this case, Plaintiffs sought no recourse against Defendants for failing to register the CSPA shares in a timely fashion as promised, nor did they pursue any rights under the CSPA against Defendants to recover damages relating to their investment losses.[6]  Instead, Plaintiffs wrote off their CSPA investment losses on their tax returns and gave little additional thought to their goals of making a profit on their CSPA shares or to Rowland Day.  Plaintiffs discarded the documents associated with the CSPA transaction seeing "no reason to keep them," or lost them in the ensuing years.  It was not until they were prompted by an attorney's solicitation letter sent eleven years after the collapse of IGM that Plaintiffs renewed their interest in their potential rights under the CSPA and claims against

---

[6]    The record demonstrates that many IGM investors filed lawsuits in the years following IGM's collapse.  In 1996, twelve of the sixteen Plaintiffs in this case joined in an action against Dorsey and several IGM executives concerning IGM's compliance with federal gaming laws.  The parties reached a settlement prior to trial.  Pursuant to the settlement agreement, plaintiffs reserved their rights against Defendants in this action, and were specifically informed of an on-going case filed in 1995 by other IGM investors who sued Day and Day & Campbell in Chicago, Illinois, claiming damages due to Day's failure to register their CSPA shares.  This case also settled before trial. None of the twelve plaintiffs joined the Chicago lawsuit.

Defendants.[7]  The depth of Plaintiffs' indifference to potential claims against Defendants for

their investment losses is remarkable.  One plaintiff testified at his deposition as follows:

> Q.  Before receiving that letter from Mr. Kallenbach, when was the last time
>      IGM had been something you thought about?
> A.  Never.
> Q.  Never?  At some point, because –
> A.  I wrote it off years and years and years ago.
> Q.  When you got the letter from Mr. Kallenbach, did you consider calling
>      anybody to find out what it might be about?
> A.  No.
> Q.  Did you specifically with reference to Mr. Day?
> A.  I understand, no.
> Q.  Why didn't you call him?
> A.  I didn't see a reason to.
> Q.  Did it occur to you that he might have an answer to the allegations being
>      made against him?
> A.  It's up to him to prove.  I didn't care one way or the other personally.
>      Rowland was guilty, let Mark [Kallenbach] prove it.
> Q.  What if he is not?
> A.  Fine by me too.  I don't care.  I could care less.
> Q.  It's only money, right?
> A.  To me, yes, to be honest with you.

On this record, the Court concludes, as a matter of law, that Plaintiffs have failed to meet

their burden of proving that they, exercising reasonable diligence, could not have discovered the

Waiver before March 2000.  Consequently, tolling does not apply.  Because the six-year

limitations period applicable to Plaintiffs' claims commenced no later than July 29, 1994, and

Plaintiffs did not file this action until March 2006, Plaintiffs' claims are time-barred.  See *Union*

*Pacific R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998) ("Important social interests, such

as rapid resolution of disputes, repose for those against whom a claim could be brought, and

avoidance of litigation involving lost evidence or distorted testimony of witnesses, underlie

---

[7]      In 1992, Kallenbach's wife invested in CSPA shares.  As part of his disassociation with IGM in 1992, Kallenbach was granted the right to include 50,000 shares of IGM on the CSPA registration statement.  After discovery of the Waiver in 2000, Kallenbach and his wife brought suit against Defendants alleging claims nearly identical to Plaintiffs' claims in the instant action. The case was settled in October 2003.

statutes of limitations." (citations omitted)).  Defendants' motion for summary judgment is granted.

**B.      Causation**

The Court briefly notes that even if Plaintiffs could survive Defendants' assertions of the statute of limitations, Defendants are still entitled to summary judgment because Plaintiffs have failed to present any competent evidence that Defendants' failure to inform them of the existence of the Waiver proximately caused their investment losses.  *Lubbers v. Anderson*, 539 N.W.2d 398, 401 (Minn. 1995) ("A defendant is entitled to summary judgment as a matter of law when the record reflects a complete lack of proof on an essential element of the plaintiffs' claim.").

Plaintiffs' evidence of causation amounts to speculation and conjecture.  Plaintiffs' self-serving declarations that they would have sold their shares (assuming they could have obtained attorney approval) to foreign buyers at a substantial profit had they known of the Waiver in 1993 are unsupported.  There is no evidence that a foreign buyer was ready and willing to purchase shares from Plaintiffs but refused to do so due to the restrictions set forth in the CSPA that the Waiver eliminated.  Plaintiffs' reliance on the report of their expert Peter Mergenthaler is also misplaced.  Mergenthaler opines as to the amount of Plaintiffs' damages due to their investment losses.  In doing so, he explicitly states that his opinion is based on the *assumption* that Plaintiffs would have negotiated a sale of their IGM shares in compliance with Regulation S. Mergenthaler does not claim to have any first-hand knowledge of any actual foreign market for Plaintiffs' CSPA shares in 1993.  Mergenthaler's opinion regarding the actual sale of Plaintiffs' CSPA shares in 1993 is speculation, and does not raise a genuine issue of material fact regarding whether concealment of the Waiver was the proximate cause of Plaintiffs' financial damages. *See Bob Useldinger & Sons, Inc. v. Hangsleben*, 505 N.W.2d 323, 328 (Minn. 1993) ("Mere

speculation, without some concrete evidence, is not enough to avoid summary judgment.").

Moreover, counsel's numerous assertions in the various supporting memoranda that the Plaintiffs

"could" or "would" have sold their CSPA shares to foreign investors if they had known about the

Waiver do not amount to competent summary judgment evidence.

## III.   CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT

IS ORDERED THAT:

1.   Defendants' motion for summary judgment [Docket No. 79] is
     GRANTED.

2.   Plaintiffs' Motion for Summary Judgment or in the Alternative for Partial
     Summary Judgment [Docket No. 83] is DENIED.

3.   The Complaint [Docket No. 1] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  January 16, 2008

s/  Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge